| | |
|---|---|
| 1 | |
| 2 | |
| 3 | |
| 4 | |
| 5 | |
| 6 | |
| 7 | |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

GARY OSTER,

               Plaintiff,

v.

HAROLD CLARKE, *et al*,

               Defendants.

Case No. C07-5508RJB-KLS

ORDER GRANTING IN PART
PLAINTIFF'S MOTION FOR
EXTENSION OF TIME

This matter has been referred to Magistrate Judge Karen L. Strombom pursuant to 28 U.S.C. § 636(b)(1), Local Rules MJR 3 and 4, and Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 72. The case is before the Court on plaintiff's filing of a motion for extension of time for discovery and to respond to defendants' motion for summary judgment. (Dkt. #47, #50). After reviewing plaintiff's motion, defendants' response thereto and the balance of the record, the Court finds and orders as follows:

On May 27, 2008, the Court issued a pretrial scheduling order setting a deadline of October 27, 2008, by which to complete discovery, and a deadline of November 27, 2008, by which to file dispositive motions. (Dkt. #30). Defendants timely filed their motion for summary judgment on November 26, 2008. (Dkt. #47). That motion was noted for consideration on December 19, 2008.[1] (Id.). Plaintiff filed his

---

[1] Plaintiff asserts in his motion for extension of time that this noting date is premature, and that defendants' motion for summary judgment instead should have been noted for consideration one week later on December 26, 2008. Plaintiff is incorrect. Local Rule CR 7(d)(3) requires that all dispositive motions be noted for the fourth Friday after filing and service of the motion.

ORDER
Page - 1

motion with the Court on December 17, 2008,[2] which is two days after the deadline for filing his response to defendants' motion for summary judgment, and, as noted by defendants, nearly two months after the discovery cut-off deadline. (Dkt. #50).

Defendants argue plaintiff's motion to extend the discovery cut-off deadline should be denied, because he has not demonstrated his failure to move for such an extension prior to that deadline was due to "excusable neglect" pursuant to Fed. R. Civ. P. 6(b). (Dkt. #55). Defendants do not object to the Court granting plaintiff an extension of time in which to file a response to their summary judgment motion. Fed. R. Civ. P. 6(b) reads in relevant part as follows:

**(b) Extending Time.**

**(1)** *In General.* When an act may or must be done within a specified time, the court may, for good cause, extend the time:

**(A)** with or without motion or notice if the court acts, or if a request is made, before the original time or its extension expires; or

**(B)** on motion made after the time has expired if the party failed to act because of excusable neglect.

As pointed out by defendants, *pro se* prisoners, like other civil litigants, are required to comply with both the federal civil and local court rules of civil procedure, notwithstanding the Court's obligation "to make reasonable allowances for pro se litigants and to read pro se papers liberally." McCabe v. Arave, 827 F.2d 634, 640 n.6 (9th Cir. 1987); see also Bias v. Moynihan, 508 F.3d 1212, 1223 (9th Cir. 2007); Carter v. C.I.R., 784 F.2d 1006, 1008 (9th Cir. 1986) (pro se litigant is expected to abide by rules of court in which he litigates); Knight v. U.S., 845 F.Supp. 1372, 1376, n.7 (D.Ariz. 1993) ("Pro se litigants . . . are required to abide by the rules of this court.").

---

The fourth Friday after defendants' filing of their summary judgment motion, however, is December 19, 2008. Accordingly, the date for consideration of that motion was properly noted.

[2]While the Court received plaintiff's motion for extension of time on December 23, 2008 (Dkt. #50), the Court deems it to have been filed on December 17, 2008. See (Dkt. #54, Declaration of Service By Mail, signed by plaintiff on December 17, 2008, in which he declares under penalty of perjury that the motion for extension of time and related documents were mailed via United States mail from the Stafford Creek Corrections Center ("SCCC")). This is because in the case of service by incarcerated *pro se* litigants, "the moment at which" such litigants "necessarily lose control over and contact with their documents is at delivery to prison authorities, not a deposit in the public mails." Faile v. Upjohn Co., 988 F.2d 985, 987-88 (9th Cir. 1993), disapproved of on other grounds, McDowell v. Calderon, 197 F.3d 1253 (9th Cir.1999) (en banc). Service under Fed. R. Civ. P. 5(b) in this context thus is completed "upon submission to prison authorities for forwarding to the party to be served." Id. (applying "prison mailbox rule" originally developed in the *habeas corpus* context to other civil filings). Accordingly, plaintiff's declaration of service by mail, which was signed on December 17, 2008, is treated as having been given to prison authorities, and therefore served on defendants (and, for the same reasons, filed with the Court), on that date.

ORDER
Page - 2

Plaintiff asserts his request for an extension of discovery should be granted by the Court because of prison officials' illegal transfer if his "jailhouse lawyer" and the law library's deficiencies at the prison where he is incarcerated, both of which have "impeded his ability to timely prepare this case." (Dkt. #50, p. 5). He argues the existence of these circumstances demonstrate excusable neglect on his part, and thus warrant an order by the Court pursuant to Fed. R. Civ. P. 56(f),[3] allowing him to conduct further discovery and amend his complaint to correct certain deficiencies therein noted in defendants' motion for summary judgment. (Dkt. #50, pp. 5-6). Defendants argue the showing plaintiff has made here does not arise to the level of excusable neglect, and thus his request should be denied. The undersigned agrees.

In the declaration he filed in support of his motion for extension of discovery, plaintiff states that in July 2007, he approached another prisoner, Matthew Silva, who also was incarcerated at the SCCC at the time, to ask him for help in prosecuting this case, as Mr. Silva was "known as a competent 'jailhouse lawyer.'" (Dkt. #51, p. 1). According to plaintiff, Mr. Silva drafted the complaint and gave it to him for filing. (Id.). Plaintiff states that after the complaint was filed, he did not know how to conduct discovery, nor did he understand the "complicated legal grounds" for the claims Mr. Silva alleged in the complaint. (Id. at p. 2). Plaintiff further states that although he did receive the Court's pretrial scheduling order, and was aware of the October 2008 discovery cut-off deadline, he did not understand that he had to submit his discovery requests at least 30 days prior to that deadline. (Id.).

This last statement is not well-taken. As counsel for defendants pointed out to plaintiff in a letter dated October 30, 2008, the Court expressly stated in its pretrial scheduling order that:

> All discovery shall be completed by **October 27, 2008**. Service of responses to interrogatories and to requests to produce, and the taking of depositions shall be completed by this date. Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 33(b)(3) requires answers or objections to be served within **thirty (30) days** after service of the interrogatories. <u>The serving party, therefore, must serve his/her interrogatories at least **thirty (30) days** before the deadline in order to allow the other party time to answer.</u>

---

[3]Fed. R. Civ. P. 56(f) reads:

**(f) When Affidavits Are Unavailable.** If a party opposing the motion shows by affidavit that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:

  **(1)** deny the motion;

  **(2)** order a continuance to enable affidavits to be obtained, depositions to be taken, or other discovery to be undertaken; or

  **(3)** issue any other just order.

ORDER
Page - 3

(Dkt. #30, p. 1 (emphasis both added and in original); Dkt. #51-2, Exhibit 1). Thus, irregardless of any lack of knowledge plaintiff may have had in regard to conducting discovery, he clearly was made aware by the plain language of the Court's pretrial scheduling order that all discovery requests had to be made at least thirty days prior to the discovery cut-off deadline. Indeed, plaintiff has not alleged he did not receive the Court's order or that he was unable to read the contents thereof, though he may not have understood all of the legal terms contained therein. Nor does the undersigned find the language quoted above to be so complex and hard to understand that a *pro se* litigant, even one not familiar with the law, would be unable to comprehend it. That language, in fact, is the same language used to inform all *pro se* prisoner litigants of applicable pretrial deadlines and their responsibilities with respect thereto.

Plaintiff further states that he submitted his discovery requests as early as he was able to – on October 28, 2008, one day after the discovery cut-off deadline – and that defendants' counsel waited 30 days before notifying him that he considered the discovery requests late. (Dkt. #50, p. 2; Dkt. #50-1, p. 2). First, with respect to the latter allegation, it must be pointed out to plaintiff that defendants were under no obligation to inform him of his failure to timely submit his discovery requests. In addition, the evidence in the record – which, incidentally, was submitted by plaintiff himself – shows that the letter addressed to plaintiff by counsel for defendants was dated October 30, 2008, merely two days after plaintiff stated he submitted his discovery requests. (Dkt. #51-1, Exhibit 1). Nor is there any indication in the record that the letter was not sent either that day or sometime soon thereafter.

Second, the record does not support plaintiff's contention that he submitted his discovery requests as early as he could. Plaintiff states in his declaration that after he filed his complaint, but prior to when Mr. Silva was transferred to another prison, he provided Mr. Silva with a number of documents he claims are needed in order to litigate this case. (Id. at p. 2). Plaintiff also states Mr. Silva claims that prison staff seized those documents back in 2007, and never returned them. (Id.). Also attached to plaintiff's motion is a declaration from Mr. Silva, in which Mr. Silva states he arrived at the SCCC in July 2007, sometime after which he was placed in segregation based on false charges and had all of his legal files seized, which apparently included those plaintiff gave him as well. (Dkt. #52, pp. 2-3).

Mr. Silva goes on to state that on December 4, 2007, he was illegally transferred to another prison, but prison staff refused to transfer his legal files "for many months." (Id. at p. 3). Even after he

ORDER
Page - 4

finally got his files, Mr. Silva states he discovered prison staff had stolen numerous documents therefrom, which he further states included documents plaintiff had provided him for the purposes of assisting in litigating this case. (Id. at pp. 3-4). Mr. Silva states he was returned to the SCCC in October 2008. (Id. at p. 4). None of these statements, however, support plaintiff's claim that he was unable to submit his discovery requests to defendants within the given time frame. First, even if it is true as related by Mr. Silva that documents had been stolen by prison staff relating to this litigation, plaintiff has been aware since at least late May 2008, of the discovery cut-off deadline.

Nor does plaintiff allege the missing documents prevented him from making discovery requests in a timely manner. Indeed, given that Mr. Silva claims the documents at issue were taken from him back in late 2007 – that is, sometime between the time Mr. Silva arrived at the SCCC in July 2007, and when he was transferred on December 4, 2007 – plaintiff had a period of at least four months in which to make a discovery request seeking copies of those missing documents. Even if plaintiff is claiming, though he has not expressly so alleged, he was not informed of the missing documents by Mr. Silva until Mr. Silva returned to the SCCC in October 2008, this does not excuse plaintiff's failure to seek discovery in a timely manner in this case. This is because, regardless of whether Mr. Silva was acting as his "jailhouse lawyer" here, plaintiff, as a *pro se* litigant, still bears the responsibility of prosecuting his own case, which includes ensuring that those who may be acting on his behalf are doing so with due diligence.

Waiting nearly a year – as appears to have been the case here – before making any inquiries into or finding out about what has been occurring in his lawsuit, although it certainly may constitute neglect, is not "excusable" neglect. Plaintiff's motion and supporting declarations make it appear that he delegated all responsibility for the prosecution of his case to Mr. Silva. But Mr. Silva is not, and cannot, act as his actual legal counsel in this matter. Indeed, as a party proceeding *pro se* here, plaintiff, as discussed above, is obligated to abide by the Federal Rules of Civil Procedure, which includes Fed. R. Civ. P. 11, requiring him to sign each document presented to the Court certifying that:

> (**1**) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
>
> (**2**) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
>
> (**3**) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation

or discovery; and

**(4)** the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

Fed. R. Civ. P. 11(b). Plaintiff, in fact, filed several motions and other documents with the Court during time Mr. Silva states he was away from the SCCC. See (Dkt. #4, 8, 31, 34, 38). At least in regard to these filings, therefore, it seems plaintiff did not require the assistance of Mr. Silva, thereby indicating an ability to prosecute and manage his lawsuit *pro se* even when Mr. Silva is not present to help him.

The Court further rejects plaintiff's assertion in his motion that his constitutional right to access the courts was violated by Mr. Silva's transfer. Plaintiff relies on several federal court cases to support his claim here, none of which, however, actually do so. For example, plaintiff cites Kunzelman v. Thompson, 799 F.2d 1172 (7th Cir. 1986), which held that although inmates do have the "right to receive assistance from other prisoners," that right "is conditioned upon a showing that the inmates in question did not have adequate access to the court without the help of" another prisoner. Id. at 1179 (citing Bounds v. Smith, 430 U.S. 817, 821 (1977)). That is, for this right to be present, there must be no "alternative means of meaningful access to the courts," such no access to law libraries or public defenders. Id. at 1178-79 (citing and quoting Johnson v. Avery, 393 U.S. 483, 490 n. 11 (1969)).

Other cases cited by plaintiff in his motion contain similar holdings. See, e.g., Gibbs v. Hopkins, 10 F.3d 373, 378 (6th Cir. 1993) ("[P]risoners are entitled to receive assistance from jailhouse lawyers where no reasonable alternatives are present and to deny this assistance denies the constitutional right of access to the courts."); Buise v. Hudkins, 584 F.2d 223, 228 (7th Cir. 1978) ("[T]he key inquiry is whether a 'reasonably adequate opportunity' to present claimed violations of fundamental constitutional rights is provided."). Thus, in Buise, the transfer of an inmate who assisted other inmates in preparing their legal documents was held to violate those inmates' constitutional right of access to the courts, since "it left them without an alternate means" of court access. Id. In that case, however, "no law library was available" and the plaintiff was the prison's "only jailhouse lawyer." Id.

Plaintiff does allege the SCCC's law library contains such deficiencies that without the assistance of Mr. Silva, he effectively is denied access to the courts. The undersigned disagrees. Inmates do have "a constitutional right of access to the courts." Cornett v. Donovan, 51 F.3d 894, 897 (9th Cir. 1995). That right "requires prison authorities to assist inmates in the preparation and filing of meaningful legal

papers" by providing them with "adequate law libraries or adequate assistance from persons trained in the law." Lewis v. Casey, 518 U.S. 343, 346 (1996) (quoting Bounds, 430 U.S. at 828). Because "meaningful access to the courts is the touchstone" here, however, to prevail on an access to the courts claim, plaintiff must "demonstrate that the alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a legal claim." Cornett, 51 F.3d at 897 (citing Bounds, 430 U.S. at 823); see also Lewis, 518 U.S. at 348 (inmate must show inadequacy of prison library or legal assistance program caused actual injury or prejudice such as inability to meet filing deadline or present claim).

Plaintiff, for example, might show:

> [T]hat a complaint he prepared was dismissed for failure to satisfy some technical requirement which, because of deficiencies in the prison's legal assistance facilities, he could not have known. Or that he had suffered arguably actionable harm that he wished to bring before the courts, but was so stymied by inadequacies of the law library that he was unable even to file a complaint.

Lewis, 518 U.S. at 352. Such is not the case here. Plaintiff, through the statements Mr. Silva makes in his declaration, claims, for example, that many of the legal resources made available to prisoners in the SCCC's law library are outdated, missing pages or are "fraudulent and inaccurate." (Dkt. #52, p. 6). But, as noted above, shortcomings in a prison law library or legal assistance program must be so deficient that the inmate was unable to meet a filing deadline or present a claim. As discussed above, though, even with no access to what plaintiff alleges to be relevant legal documents for nearly a year, the record reveals that plaintiff was able to, and did, access this Court by submitting motions and other filings. In addition, also as discussed above, nothing appears to have prevented plaintiff from attempting to obtain copies of those missing documents through a timely discovery request.[4]

Lastly, plaintiff argues additional discovery should be allowed in this matter, because, as related in Mr. Silva's declaration, after having discussed the case with plaintiff upon his return to the SCCC, there are "a number of evidentiary matters" which need "to be investigated and presented" to the Court before it disposes of this case. (Dkt. #52, p. 4). Through his lack of due diligence in prosecuting this case and his failure to properly oversee management of what is, after all, his own *pro se* lawsuit, however, plaintiff has forfeited his right to obtain such additional discovery. As discussed above, nothing prevented plaintiff from making earlier discovery requests in an effort to obtain the missing legal

---

[4] Plaintiff also has not alleged or shown that Mr. Silva, while perhaps his preferred "jailhouse lawyer," is the only prisoner at the SCCC to whom he can turn for assistance with the preparation of his legal filings and the prosecution of his claims.

documents. Indeed, even if plaintiff was unaware they were missing until October 2008, when Mr. Silva returned to the SCCC, he did nothing apparently, also as discussed above, to ensure proper progression of his suit.

Accordingly, because plaintiff has failed to demonstrate his failure to timely submit his discovery requests was due to "excusable neglect," his request for an extension of discovery contained in his motion (Dkt. #50) hereby is DENIED. While it appears plaintiff's motion for extension of time to respond to defendants' motion for summary judgment also was untimely filed,[5] defendants do not object to the Court granting him one here. (Dkt. #55, p. 3). Accordingly, plaintiff's motion for an extension of time (Dkt. #50) hereby is GRANTED to the extent that plaintiff shall have until **no later than March 2, 2009**, in which to respond to defendants' summary judgment motion. Defendants may file a reply thereto by **no later than March 6, 2009**. The Clerk, therefore, shall re-note defendants' motion for summary judgment (Dkt. #47) for consideration on **March 6, 2009**.

**Plaintiff is warned, however, that no further extensions of time will be granted in which to file a response to defendant, and that failure to timely file such a response by the above date may be taken as an admission that defendants' motion has merit. See Local Rule CR 7(b)(2).**

The Clerk is directed to send a copy of this Order to plaintiff and counsel for defendants.

DATED this 2nd day of February, 2009.

Karen L. Strombom
United States Magistrate Judge

---

[5] Pursuant to Local Rule CR 3(d), "[a]ny opposition papers shall be filed and served not later than the Monday before the noting date," which in regard to defendants' motion for summary judgment was December 15, 2008. As noted above, however, plaintiff submitted his motion for extension of time for service to prison authorities two days late on December 17, 2008.