UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

GARY OSTER,

           Plaintiff,

      v.

HAROLD CLARKE, *et al.*,

           Defendants.

Case No. C07-5508RJB-KLS

REPORT AND RECOMMENDATION

Noted for May 1, 2009

    This matter has been referred to the undersigned Magistrate Judge pursuant to Title 28 U.S.C. §§ 636(b)(1)(A) and 636(b)(1)(B) and Local Rules MJR 1, MJR 3, and MJR 4. This matter comes before the court on defendants' motion for summary judgment. (Dkt. #47). Having reviewed defendants' motion and the remaining record, the undersigned submits the following report and recommendation for the Court's review.

## FACTUAL AND PROCEDURAL BACKGROUND

    This case involves a civil rights action filed by plaintiff pursuant to 42 U.S.C. § 1983, in which he alleges defendants violated his First Amendment and due process rights, by having him found guilty of a serious infraction based on falsified information – which resulted in an increase in his custody status and transfer to another prison facility – and by conspiring to retaliate against him for appealing that infraction. See (Dkt. #6). He seeks both monetary damages and injunctive relief. See id.

    On November 26, 2008, defendants filed their motion for summary judgment, arguing plaintiff's

REPORT AND RECOMMENDATION
Page - 1

1  complaint should be dismissed because he had failed to state a claim upon which relief may be granted,
2  and because they are entitled to qualified immunity. (Dkt. #47). Although plaintiff has not filed any
3  response to defendants' motion, given that the date set for consideration thereof has now passed (see Dkt.
4  #59), that motion is now ripe for review.

## DISCUSSION

I.  Standards of Review

   A.  Summary Judgment

Summary judgment shall be rendered if the pleadings, exhibits, and affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 56(c). In deciding whether summary judgment should be granted, in general the Court "must view the evidence in the light most favorable to the nonmoving party," and draw all inferences "in the light most favorable" to that party. T.W. Electrical Serv., Inc. v. Pacific Electrical Contractors Ass'n, 809 F.2d 626, 630-31 (9th Cir. 1987). When a summary judgment motion is supported as provided in Fed. R. Civ. P. 56, an adverse party may not rest upon the mere allegations or denials of his or her pleading, but his or her response, by affidavits or as otherwise provided in Fed. R. Civ. P. 56, must set forth specific facts showing there is a genuine issue for trial. Fed. R. Civ. P. 56(e)(2). If the non-moving party does not so respond, then summary judgment, if appropriate, shall be rendered against that party.[1] Id.

The moving party must demonstrate the absence of a genuine issue of fact for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986). Mere disagreement or the bald assertion that a genuine issue of material fact exists does not preclude summary judgment. California Architectural Building Products, Inc. v. Franciscan Ceramics, Inc., 818 F.2d 1466, 1468 (9th Cir. 1987). A "material" fact is one

---

[1] Defendants argue in a reply brief they submitted that because no response to their motion was filed, summary judgment should be granted against plaintiff on that basis. (Dkt. #61). As just noted, the federal civil rules allow for entry of summary judgment in such circumstances, when it is proper to do so. See Fed. R. Civ. P. 56(e)(2) ("If the opposing party does not so respond [by setting out specific facts showing a genuine issue for trial], summary judgment should, if appropriate, be entered against that party."); see also Local Rule CR 7(b)(2) ("If a party fails to file papers in opposition to a motion, such failure may be considered by the court as an admission that the motion has merit."). While the undersigned does find, for the reasons set forth herein, that summary judgment for defendants is appropriate in this case, that determination has been made on the merits of defendants' motion rather than merely on the basis of plaintiff's failure to properly respond thereto. See Fed. R. Civ. P. 56(e)(2) (judgment shall be entered if appropriate). However, in so finding for defendants, the undersigned has taken into account plaintiff's failure to set out any specific facts, or evidence in support thereof, showing a genuine issue for trial in response to the summary judgment motion, and has given that failure due consideration in determining the material facts here.

REPORT AND RECOMMENDATION
Page - 2

which is "relevant to an element of a claim or defense and whose existence might affect the outcome of the suit," and the materiality of which is "determined by the substantive law governing the claim." T.W. Electrical Serv., 809 F.2d at 630. Mere "[d]isputes over irrelevant or unnecessary facts," therefore, "will not preclude a grant of summary judgment." Id.

Rather, the non-moving party "must produce at least some 'significant probative evidence tending to support the complaint.'" Id. (quoting Anderson, 477 U.S. at 290); see also California Architectural Building Products, Inc., 818 F.2d at 1468 ("No longer can it be argued that any disagreement about a material issue of fact precludes the use of summary judgment."). In other words, the purpose of summary judgment "is not to replace conclusory allegations of the complaint or answer with conclusory allegations of an affidavit." Lujan v. National Wildlife Federation, 497 U.S. 871, 888 (1990). The undersigned finds that, for the reasons set forth below, plaintiff has not shown the existence of any genuine issue of material fact, and therefore defendants are entitled to summary judgment.

B.  Section 1983 Causes of Action

To state a claim under 42 U.S.C. § 1983, a complaint must allege: (i) the conduct complained of was committed by a person acting under color of state law, and (ii) the conduct deprived a person of a right, privilege, or immunity secured by the Constitution or laws of the United States. Parratt v. Taylor, 451 U.S. 527, 535 (1981), overruled on other grounds, Daniels v. Williams, 474 U.S. 327 (1986). Section 1983 is the appropriate avenue to remedy an alleged wrong only if both of these elements are present. Haygood v. Younger, 769 F.2d 1350, 1354 (9th Cir. 1985). A party has acted under color of state law if he or she "exercise[s] power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" Johnson v. Knowles, 113 F.3d 1114, 1117 (9th Cir. 1997) (citations omitted).

Plaintiff also must allege facts showing how individually named defendants caused or personally participated in causing the harm alleged in the complaint. Arnold v. IBM, 637 F.2d 1350, 1355 (9th Cir. 1981). A person will be held to deprive another "of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that *causes* the deprivation of which [the plaintiff complains]." Leer v. Murphy, 844 F.2d 628, 633 (9th Cir. 1988) (emphasis in original) (citation omitted). The Court's inquiry

1  "must be individualized and focus on the duties and responsibilities of each individual defendant whose
2  acts or omissions are alleged to have caused a constitutional deprivation." Id.

3  II.     Plaintiff Has Failed to State a Proper Due Process Claim

4         In his complaint, plaintiff claims defendants violated his due process rights under the Fourteenth
5  Amendment to be free "from disciplinary action and/or guilty findings being imposed against him without
6  any evidence of his guilt." (Dkt. #6, p. 8). Specifically, plaintiff alleges that in or around August 6, 2006,
7  he was placed in the "segregation unit" of the McNeil Island Corrections Center ("MICC"), as the result
8  of "a falsified serious infraction report" issued against him by an official at that prison who is not a party
9  to this case. (Id. at pp. 4-5). Plaintiff states that a hearing was held on November 17, 2006, regarding the
10 serious infraction report, which was conducted by defendant James Allen.[2] (Id. at p. 5). Plaintiff claims
11 that defendant Allen knew he was not guilty of the serious infraction, and that no evidence of his guilt
12 was presented to defendant Allen at the hearing. (Id.).

13        Despite this lack of evidence, plaintiff asserts, defendant Allen found him guilty in violation of his
14 duty as a hearing officer. (Id.). Plaintiff further asserts that due to the allegations contained in the serious
15 infraction report, he was held in the MICC segregation unit until December 6, 2006. (Id.). He claims that
16 defendant Allen, along with defendants Alice Payne and Douglas Cole, knew there was no evidence upon
17 which to find him guilty, and that they each "knowingly and intentionally participated in" his "unlawful
18 segregation by ordering and authorizing the same." (Id. at p. 6). Plaintiff also claims that defendant
19 Payne had a duty to issue a timely decision on the appeal he filed in regard to defendant Allen's guilty
20 finding in accordance with the Washington Administrate Code ("WAC"), but failed to do so. (Id.).

21        The Due Process Clause of the Fourteenth Amendment provides that "no state shall 'deprive any
22 person of life, liberty, or property without due process of law.'" Toussaint v. McCarthy, 801 F.3d 1080,
23 1089 (9th Cir. 1986). A due process violation requires the establishment of: "(1) a liberty or property
24 interest protected by the Constitution; (2) a deprivation of the interest by the government; [and] (3) lack
25 of process." Portman v. County of Santa Clara, 995 F.2d 898, 904 (9th Cir. 1993). The Due Process
26 Clause applies in the prison context as well – that is, prisoners "may not be deprived of life, liberty, or

---

[2]On November 21, 2008, defendants filed a notice informing plaintiff and the Court of defendant Allen's death, which defendants state occurred on August 30, 2008. See (Dkt. #46).

1  property without due process of law" – albeit the protections afforded them thereunder are "subject to
2  restrictions imposed by the nature of the regime to which they have been lawfully committed." Wolff v.
3  McDonnell, 418 U.S. 539, 556 (1974) (mutual accommodation between institutional needs and objectives
4  of prison and constitutional provisions of general application is required); see also Superintendent v. Hill,
5  472 U.S. 445, 453 (1985) ("[D]ue process requires procedural protections before a prison inmate can be
6  deprived of a protected liberty interest."); Freeman v. Rideout, 808 F.2d 949, 951 (2nd Cir. 1986) (inmate
7  has right not to be deprived of protected liberty interest without due process of law).

8  "To invoke the protections of the Due Process Clause," therefore, a prisoner "must first establish
9  that a protected liberty interest is at stake." Stewart v. Alameida, 418 F.Supp.2d 1154, 1165 (N.D. Cal.
10 2006) (citing Wilkinson v. Austin, 125 S.Ct. 2384, 2393 (2005)); Toussaint, 801 F.2d at 1089 (threshold
11 inquiry is whether inmate has liberty interest). As noted above, plaintiff claims he has a right to be free
12 from disciplinary action based on false charges. An inmate, however, "has no constitutionally guaranteed
13 immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a
14 protected liberty interest." Freeman, 808 F.2d at 951 (holding that since inmate was granted hearing and
15 afforded opportunity to rebut charges against him, fact that charges filed by prison guard were unfounded
16 did not give rise to *per se* constitutional violation); see also Sprouse v. Babcock, 870 F.2d 450, 452 (8th
17 Cir. 1989) (finding inmate's claims based on falsity of charges brought by prison counselor standing
18 alone did not state constitutional claim).

19 Thus, to the extent plaintiff's due process claim rests solely on the fact that an MICC official filed
20 a falsified serious infraction report against him, that claim fails. Indeed, the MICC official who plaintiff
21 alleges issued that report is not even a party to this action. See Arnold, 637 F.2d at 1355 (plaintiff must
22 allege facts showing how individually named defendants have caused or personally participated in
23 causing harm alleged). Plaintiff does allege, though, that he was placed in the MICC segregation unit
24 because of the falsified serious infraction report. Defendants argue a prisoner has no constitutional right
25 to be free from segregation, administrative or punitive. However, the due process analysis in the prison
26 segregation context requires a slightly more individualized inquiry than that.

27 As noted above, the "threshold inquiry" here is whether plaintiff possesses a liberty interest in not
28 being removed from the general prison population. Toussaint, 801 F.2d at 1089. If no such interest exists,

"the constitution does not require prison officials to accord . . . any procedural protections when deciding to segregate" an inmate. Id. Defendants are correct in stating that the Due Process Clause "does not of its own force create a liberty interest in freedom from administrative segregation." Id. at 1091 (citing Hewitt v. Helms, 459 U.S. 460, 468 (1983)). This is because placement in "less amenable and more restrictive quarters for non-punitive reasons is well within the terms of confinement ordinarily contemplated by a prison sentence." Toussaint, 802 F.2d at 1091-92 (quoting Hewitt, 459 U.S. at 468) ("[A]dministrative segregation is the sort of confinement that inmates should reasonably anticipate receiving at some point in their incarceration."); Sandin v. Conner, 515 U.S. 472, 480 (1995) (Due Process Clause alone confers no liberty interest in freedom from state action taken within sentence imposed).

Indeed, "[a] liberty interest does not arise even when administrative segregation imposes 'severe hardships'" on the prisoner. Toussaint, 801 F.2d at 1092 (quoting Hewitt, 459 U.S. at 467); see also May v. Baldwin, 109 F.3d 557, 565 (9th Cir. 1997) (inmate has no liberty interest, and thus no due process right, in being free from administrative segregation). A liberty interest, though, also may arise from state law. Toussaint, 801 F.2d at 1089; Sandin, 515 U.S. at 483-84 (state may under certain circumstances create liberty interest protected by Due Process Clause). However, that interest "will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin, 515 U.S. at 484 (internal citations omitted); Resnick v. Hayes, 213 F.3d 443, 448 (9th Cir. 2000); Jackson v. Carey, 353 F.3d 750, 755 (9th Cir. 2003).

What "condition or combination of conditions or factors would meet the [Sandin] test requires case by case, fact by fact consideration." Keenan v. Hall, 83 F.3d 1083, 1089 (9th Cir. 1996). Further, in regard to disciplinary segregation, determining whether a restraint creates such an imposition "requires a factual comparison between conditions in [the prison's] general population or administrative segregation (whichever is applicable) and disciplinary segregation, examining the hardship caused by the prisoner's challenged action in relation to the basic conditions of life as a prisoner." Jackson, 353 F.3d at 755. The presence of the following three factors, however, do indicate the absence of a liberty interest in avoiding being placed in disciplinary segregation:

> (1) [the] disciplinary segregation was essentially the same as discretionary [i.e., administrative] forms of segregation; (2) a comparison between the plaintiff's confinement and conditions in the general population showed that the plaintiff suffered no "major disruption in his environment"; and (3) the length of the plaintiff's sentence was not affected.

Resnick, 213 F.3d at 448 (quoting Sandin, 515 U.S. at 486-87).

The United States Supreme Court thus has rejected the assertion "that any state action taken for a punitive reason encroaches upon a liberty interest under the Due Process Clause even in the absence of any state regulation." Sandin, 515 U.S. at 484. The Supreme Court explained that this is so because, as with segregation that is imposed for administrative purposes, "[d]iscipline by prison officials in response to a wide range of misconduct falls with the expected perimeters of the sentence imposed by a court of law." Id. at 485. Here too, therefore, where the record fails to show that placement in disciplinary segregation presents "the type of atypical, significant deprivation" that "might conceivably create a liberty interest," no procedural due process violation will be found. Id. at 486 (finding disciplinary segregation in which inmate was placed, with insignificant exceptions, mirrored those conditions imposed upon inmates in administrative segregation).

Plaintiff, as noted above, claims he was placed in the MICC "segregation unit" during the period of August 6, 2006, through December 6, 2006. It is unclear whether plaintiff is alleging such segregation was imposed for administrative reasons (given that he was placed therein prior to the date his hearing was held) or was disciplinary in nature (given his allegations that such segregation was due to the issuance of the serious infraction report). Regardless, plaintiff has come forth with no evidence to demonstrate that the conditions he experienced in the segregation unit constituted an atypical and significant hardship in relation to the ordinary incidents of prison life. The absence of any protected liberty interest here appears all the more clear, given that the evidence in the record reveals plaintiff's appeal of his guilty finding was granted, and his loss of "good time" restored. See (Dkt. #47-4; Exhibit 3, pp. 2-3; Dkt. #47-5, Exhibit 4, p. 2; Dkt. #47-7, Exhibit 6); see also Sandin, 515 U.S. at 486.[3]

---

[3] In finding the record devoid of evidence indicating that the plaintiff's placement in disciplinary segregation implicated any protected liberty interests, the Supreme Court in Sandin also stressed the fact that the state had expunged his disciplinary record nine months after he was put in segregation, which is greater than the length of time plaintiff's sanctions remained in place following his disciplinary hearing decision. 515 U.S. at 486; see also (Dkt. #47-7, Exhibit 6). The Supreme Court in Sandin further observed that nothing in the plaintiff's situation presented "a case where the State's action will inevitably affect the duration of his sentence." Id. at 487. In both of these senses, then, the facts of Sandin are substantially similar to those in this case, and indicate plaintiff lacks a protected liberty interest in avoiding segregation here.

REPORT AND RECOMMENDATION
Page - 7

To the extent a protected liberty interest does exist in this case, furthermore, plaintiff has failed to establish he was deprived thereof without due process of law. "The quantum of process constitutionally due to segregated inmates depends upon whether the segregation is punitive or administrative in nature." Stewart, 418 F.Supp.2d at 1165. With respect to administrative segregation, the only procedures that due process requires are that: (1) "an informal nonadversary hearing" be held "within a reasonable time after the prisoner is segregated"; (2) the prisoner be informed of the charges against him or the prison officials' "reasons for considering segregation"; and (3) the prisoner be allowed "to present his views to the prison official charged with deciding whether to transfer him to administrative segregation." Toussaint, 801 F.2d at 1101; Stewart, 418 F.Supp.2d at 1165 (quoting Hewitt, 459 U.S. 476).

Where the loss of a protected liberty interest may result from a disciplinary hearing decision, on the other hand, due process requires the prison inmate to receive more: "(1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action." Hill, 472 U.S. at 454 (citing Wolff, 418 U.S. at 563-67); Black v. Lane, 22 F.3d 1395, 1402 n. 9 (7th Cir. 1994); see also Freeman, 808 F.2d at 951 (protected liberty interest in not being placed in punitive segregation gives rise to constitutional right not to be placed there without due process of law) (citing Hewitt, 459 U.S. at 470-72; Wolff, 418 U.S. at 555-57). In addition, a disciplinary hearing decision will "not comport with 'the minimum requirements of procedural due process,' . . . unless" it is "supported by some evidence in the record." Hill, 472 U.S. at 2773 (quoting Wolff, 418 U.S. at 558).

"Once a court has decided that the [above] procedural due process requirements have been met," then "its function is to determine whether there is some evidence which supports the" disciplinary hearing decision. Freeman, 808 F.2d at 954-55 (citing Hill, 472 U.S. at 455); Hines v. Gomez, 108 F.3d 265, 268 (9th Cir. 1997); Barnett v. Centoni, 31 F.3d 813, 816 (9th Cir. 1994). In discussing the reasons behind the need for at least some evidence in the record to support the hearing decision, the United States Supreme Court has noted that "[t]he requirements of due process are flexible and depend on a balancing of the interests affected by the relevant government action." Hill, 472 U.S. at 454; Wolff, 418 U.S. at 556 . Thus, while an inmate does have "a strong interest in assuring that the loss of" a protected liberty

REPORT AND RECOMMENDATION
Page - 8

interest "is not imposed arbitrarily," that interest "must be accommodated in the distinctive setting of a prison." Hill, 472 U.S. at 454.

Accordingly, in setting out "the safeguards required by due process" here, the Supreme Court has recognized "the legitimate institutional needs of assuring the safety of inmates and prisoners, avoiding burdensome administrative requirements that might be susceptible to manipulation, and preserving the disciplinary process as a means of rehabilitation." Id. at 454-55. At the same time, though, "[r]equiring a modicum of evidence to support" a prison's disciplinary hearing decision to deprive an inmate of his or her liberty interest helps "to prevent arbitrary deprivations without threatening institutional interests or imposing undue administrative burdens." Id. at 455. A disciplinary hearing decision resulting in the loss of an inmate's liberty interest, therefore, will violate due process only "if the decision is not supported by any evidence."[4] Id. (emphasis added); see also Hines, 108 F.3d at 268.

In either case – that is, whether plaintiff's placement in segregation is considered administrative or disciplinary in nature – there is no indication in the record that all process constitutionally due him was not provided. The record shows, and plaintiff himself admits, that he received a hearing on the serious infraction report, which formed the basis of his placement in the MICC segregation unit. (Dkt. #6, p. 5); (Dkt. #47-3, Exhibit 2, p. 2). In addition, plaintiff does not claim that the hearing he received was not held within a reasonable time after he was placed in the segregation unit, nor does he contest – and, again, the record does show – that he received advance written notice of the charges made against him. (Dkt. #47-3, Exhibit 2, Attachment D). So too does the record show – and once more plaintiff has failed to

---

[4]The Supreme Court went on to explain in relevant part that:

[R]ecognizing that due process requires some evidentiary basis for a decision to [deprive an inmate of a liberty interest] will not impose significant new burdens on proceedings within the prison. Nor does it imply that a disciplinary board's factual findings or decisions with respect to appropriate punishment are subject to second-guessing upon review.

. . . [T]he requirements of due process are satisfied if some evidence supports the decision . . . This standard is met if "there was some evidence from which the conclusion of the administrative tribunal could be deduced . . ." Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board. . . . The fundamental fairness guaranteed by the Due Process Clause does not require courts to set aside decisions of prison administrators that have some basis in fact. . . .

Id. at 455-56 (internal citations omitted) (finding in that while evidence supporting disciplinary hearing decision might have been characterized as meager, record was not so devoid of evidence that decision's findings were without support or otherwise arbitrary).

allege to the contrary – that he was allowed to present his views and was given an opportunity to call witnesses and present other evidence in his defense at the hearing. (Id., Attachments D-E). Lastly, it appears plaintiff was provided with a written statement of the evidence relied on at the hearing and the reasons for the guilty finding and resulting disciplinary action. See (Id., Attachments E-F).

The only remaining issue then – again, to the extent that plaintiff has a protected liberty interest at stake here – is whether there is any evidence in the record to support the disciplinary hearing decision. The undersigned finds there is. As discussed above, only a "modicum of evidence" is what is required to satisfy due process. While plaintiff does allege the serious infraction report itself contained false charges, and the record shows defendant Allen relied at least in part on that report in finding plaintiff guilty of the serious infraction, the record further shows the disciplinary hearing decision was based on "confidential information reports" as well. (Id., Attachment E; Dkt. #47-4, Exhibit 3, p. 2). Although the reports themselves are not before the Court, plaintiff does not allege or come forth with any evidence to show those reports were unreliable. Accordingly, the undersigned rejects plaintiff's assertion that "no evidence" of his guilt was presented at the hearing.[5] See (Dkt. #6, p. 5).

III. Plaintiff Has Not Established a Valid Retaliation or Conspiracy Claim

Plaintiff claims defendants Payne, Cole and Allen conspired to punish him for the lawful exercise of his right to appeal defendant Allen's guilty finding. (Dkt. #6, p. 6). As noted above, on December 14, 2006, defendant Cole issued an appeal decision,[6] in which he reversed defendant Allen's finding of guilt

---

[5] For the same reasons, the undersigned finds without merit plaintiff's contention that defendants Payne, Douglas and Cole also "knew that there was no evidence upon which to hold" him in segregation, and that they "each knowingly and intentionally participated in" his "unlawful segregation by ordering and authorizing the same." (Dkt. #6, p. 6). Indeed, plaintiff has presented no evidence showing that these defendants participated in the disciplinary hearing decision or in the decision to place and keep him in the MICC segregation unit, or indeed in the decision to charge him with a serious infraction in the first place.

Nor, for that matter, has plaintiff presented any evidence that defendant Payne failed to timely issue a decision concerning his appeal of the disciplinary hearing decision. Rather, the record reveals that plaintiff's appeal was received by prison authorities on December 4, 2006, and that the decision reversing the guilty finding was issued on December 14, 2006, well within the 10 day time deadline he states was required under the WAC, which actually would have been December 18, 2006. (Dkt. # 6, p. 6; Dkt. #47-3, Exhibit 2, Attachments I-K; Dkt. #47-4, Exhibit 3, p. 2); see WAC 137-28-380(3) ("The superintendent shall act on the [inmate] appeal within ten working days of its receipt.") (emphasis added); see also WAC 137-28-160 (defining "[w]orking days" to mean "Monday through Friday, excluding weekends and holidays").

[6] Plaintiff alleges defendant Cole issued his decision in January 2007. (Dkt. #6, p. 6). As noted above, however, the record reveals that the decision actually was issued on December 14, 2006. Interestingly, the fact that plaintiff admits here that it was defendant Cole who issued the appeal decision, further calls into doubt his earlier allegation that defendant Payne was untimely in issuing that decision. Nor does plaintiff allege or provide any evidence to show that it was defendant Payne's duty to timely issue that decision, rather than that of defendant Cole.

REPORT AND RECOMMENDATION
Page - 10

1 on the basis that there was "insufficient evidence" to support it.[7] (Dkt. #47-4, Exhibit 3, pp. 2-3). On
2 December 11, 2006 – as noted by plaintiff, just a few days prior to defendant Cole's decision – he was
3 transferred to the Stafford Creek Corrections Center ("SCCC"). (Dkt. #6, p. 6; Dkt. #47-4, exhibit 3, p.
4 1). Plaintiff alleges he was "knowingly and intentionally" transferred there by defendants Payne, Cole
5 and Allen in the furtherance of their "conspiratorial scheme." (Dkt. #6, p. 6).

A claim of conspiracy may be brought by an individual under the Ku Klux Klan Act of 1871, 42 U.S.C. § 1985(3), for the deprivation of his or her "legally protected rights." Sever v. Alaska Pulp Corp., 978 F.2d 1529, 1536 (9th Cir. 1992). "To bring a cause of action successfully under § 1985(3), a plaintiff must allege and prove four elements:

> (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of this conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States.

Id. (quoting United Brotherhood of Carpenters and Joiners of America v. Scott, 463 U.S. 825, 828-29 (1983)). Accordingly, "in addition to identifying a legally protected right" at step (2), the plaintiff must demonstrate deprivation of that right was "motivated by 'some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action.'" Sever, 978 F.2d at 1536 (quoting Griffith v. Breckenridge, 102 S.Ct. 1790, 1798 (1971)).

In regard to an alleged conspiracy to deprive a plaintiff of his or her legally protected rights based on "otherwise class-based, invidiously discriminatory animus," furthermore, the scope of section 1985(3) will be extended beyond race only when it can be shown "there has been a governmental determination" that the members of the class to which the plaintiff is claiming he or she belongs requires and warrants "special federal assistance in protecting their civil rights." Id. (citation omitted). Thus, either the class to which the plaintiff belongs must have been designated by the courts as "a suspect or quasi-suspect" class "requiring more exacting scrutiny," or Congress must indicate "through legislation that the class required special protection." Id. (citation omitted). Plaintiff, however, has failed to make the showing required by

---

[7] Defendant Cole did find, however, that defendant Allen also had "made an independent determination regarding reliability of the confidential source(s), credibility of the information, and safety concerns to justify non-disclosure of the confidential source(s) of information." (Dkt. #47-4, Exhibit 3, p. 2). Plaintiff has neither alleged nor come forth with any evidence to show this additional finding is unsupported by the record or otherwise improper.

REPORT AND RECOMMENDATION
Page - 11

1  the Supreme Court and Ninth Circuit in this case.

2  First, while plaintiff does allege a conspiracy on the part of defendants Payne, Cole and Allen here to retaliate against him for asserting his right to appeal his guilty finding, he has neither alleged nor shown the claimed conspiracy was motivated by some racial or otherwise class-based, invidiously discriminatory animus. Indeed, he does not even claim that the above three defendants conspired against him based upon his race, or that he is a member of a class requiring or warranting special protection. The mere fact that he is a prisoner, furthermore, does not qualify him as a member of a protected or suspect class. See Pryor v. Brennan, 914 F.2d 921, 923 (7th Cir. 1990); Moss v. Clark, 886 F.2d 686, 690 (4th Cir. 1989); Thornton v. Hunt, 852 F.2d 526, 527 (11th Cir. 1988).

Plaintiff also has failed to establish that he was deprived of a legally protected right as a result of the alleged conspiracy. To state a claim for retaliation, plaintiff "must allege both that the type of activity he engaged in was protected under the first amendment and that the state impermissibly infringed on his right to engage in the protected activity." Rizzo v. Dawson, 778 F.2d 527, 531 (9th Cir. 1985). In addition, plaintiff "must allege that he was retaliated against for exercising his constitutional rights and that the retaliatory action does not advance legitimate penological goals, such as preserving institutional order and discipline." Barnett v. Centoni, 31 F.3d 813, 815-16 (9th Cir. 1994).

Prison inmates do "have the right to petition the Government for redress of grievances." Cruz v. Beto, 405 U.S. 319, 321 (1972); Bradley v. Hall, 64 F.3d 1276, 1279 (9th Cir. 1995) (First Amendment precludes prison authorities from penalizing prisoners from exercising right to petition government for redress of grievances). In addition, "a chilling effect on a prisoner's First Amendment right to file prison grievances is sufficient to raise a retaliation claim." Bruce v. Ylst, 351 F.3d 1283, 1288 (9th Cir. 2003); Bradley, 64 F.3d at 1279 (right of meaningful access to courts extends to established prison procedures). Defendants do not challenge plaintiff's assertion that he had the right to appeal defendant Allen's hearing decision, and, indeed, as discussed above, he was allowed to do so, resulting in defendant Cole's decision to reverse his guilty finding.

As to plaintiff's claim that he was transferred in retaliation for asserting this right to appeal his guilty finding, there are limits on the types of action prison officials may take in response to an inmate's exercise of such a right. Prison officials thus may "not transfer an inmate to another prison in retaliation

1   for the inmate's exercise of his First Amendment right to pursue federal civil rights litigation." Pratt v.
2   Rowland, 65 F.3d 802, 806-07 (9th Cir. 1995) (quoting Sandin v. Connor, 115 S. Ct. 2293, 2299 (1995)).
3   Federal courts, though, "should be circumspect when asked to intervene in the operation of state prisons,"
4   and "should 'afford appropriate deference and flexibility' to prison officials in the evaluation of proffered
5   legitimate penological reasons for conduct alleged to be retaliatory." Id.  The inmate, furthermore, bears
6   the burden of proving the absence of any legitimate correctional goals. Id. at 806.

7   Plaintiff presents no evidence that his transfer was for the purpose of punishing him for exercising
8   his right to appeal his guilty finding.  Indeed, plaintiff has not even shown that defendants Payne, Cole or
9   Allen were the prison officials who actually caused or participated in causing his transfer to the SCCC to
10  occur.  Rather, the record shows that he was transferred to that prison due to the serious infraction he was
11  found to be guilty of committing – which finding, as discussed above, he failed to establish violated his
12  procedural due process rights or otherwise was constitutionally improper – and the resulting demotion in
13  his custody status. See (Dkt. #47-2, Exhibit 1, Attachment A, p. 22 of 34; Dkt. #47-5, Exhibit 4, p. 1).
14  The bare conclusory allegations in his complaint to the contrary are insufficient to overcome this evidence
15  of a legitimate penological reason for effecting his transfer. See Fed. R. Civ. P. 56(e)(2).

16  Plaintiff further claims that despite knowing his guilty finding was unwarranted, and having been
17  informed of the adverse consequences resulting therefrom, defendants Payne, Allen and Cole,  along with
18  defendants Harold Clarke, Ruben Cedeno, Victoria Roberts, Charles Jones, Bill Franks,[8] and Corrections
19  Counselor Dehaven, "knowingly and intentionally failed to take any action to correct the constitutional
20  wrongs," which, he asserts, "are still being imposed upon" him. (Dkt. #6, p. 7).  In addition, plaintiff
21  alleges that defendants Clarke, Cedeno, Roberts, Jones, Franks, and Dehaven conspired "to cover up the
22  illegality of their colleague's [sic] acts." (Id.).  As to the latter allegation, plaintiff has alleged no specific
23  facts, or produced any actual evidence, regarding any such cover up.

24  The record shows, furthermore, that all of the claimed adverse consequences, including plaintiff's
25  transfer to the SCCC, eventually were reversed, and the infraction was removed from his prison record.
26  See (Dkt. #47-3, Exhibit 2, Attachments M, P; Dkt. #47-4, Exhibit 3, p. 3; Dkt. #47-5, Exhibit 4, p. 2;
27  Dkt. #47-6, Exhibit 5, p. 2; Dkt. #47-7, Exhibit 6).  Further, the only reason plaintiff continued to be kept
28

---

[8]Defendants Franks and Roberts are no longer parties to this case. See (Dkt. #44, #48).

in a higher custody status at the SCCC thereafter, appears to have been because he had an "Out of State Detainer" from Oregon, which he was required to serve consecutively following his incarceration in Washington. See (Dkt. #47-3, Attachment P; Dkt. #47-5, Exhibit 4, p. 2, and attached "Chronos Quick Search (Results)" for plaintiff; Dkt. #47-6, Exhibit 5, p. 2). Even then, shortly after the infraction was removed from plaintiff's record and his "good time" was restored, the DOC promoted him to a lower custody status, thereby resulting in his transfer back to the MICC on August 27, 2007. See (Dkt. #47-5, Exhibit 4, p. 2; Dkt. #47-6, Exhibit 5, p. 2).

IV. Defendants' Assertion of Qualified Immunity

Under the doctrine of qualified immunity, state officials "performing discretionary functions [are protected] from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); Somers v. Thurman, 109 F.3d 614, 617 (9th Cir. 1997). In Saucier v. Katz, 533 U.S. 194 (2001), the Supreme Court "mandated a two-step sequence for resolving government officials' qualified immunity claims," describing those steps as follows:

> . . . First, a court must decide whether the facts that a plaintiff has alleged . . . or shown . . . make out a violation of a constitutional right. . . . Second, if the plaintiff has satisfied this first step, the court must decide whether the right at issue was "clearly established" at the time of defendant's alleged misconduct. . . . Qualified immunity is applicable unless the official's conduct violated a clearly established constitutional right.

Pearson v. Callahan, 129 S.Ct. 808, 815-16 (2009) (citing Saucier, 533 U.S. at 121; Anderson v. Creighton, 483 U.S. 635, 640 (1987)); see also Conn v. Gabbert, 526 U.S. 286, 290 (1999) (court first must determine whether plaintiff has alleged deprivation of actual constitutional right; if not, issue of qualified immunity does not arise).

In Pearson, however, the Supreme Court stated that while the above two-step sequence "is often appropriate, it should no longer be regarded as mandatory." Id. at 818. Courts instead should "exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." Id. That analysis, though, still "is often beneficial," such as when it is "difficult to decide whether a right is clearly established without deciding precisely what the constitutional right happens to be." Id. (citation omitted).

In this case, the undersigned found it necessary to first determine precisely the constitutional right

REPORT AND RECOMMENDATION
Page - 14

or rights plaintiff alleged in his complaint defendants had violated. Defendants argue they are entitled to qualified immunity, because they did not violate any clearly established law of which a reasonable person would have known. As discussed above, though, plaintiff failed to allege a valid due process, retaliation, conspiracy or other constitutional claim here. Because plaintiff has not alleged an actual deprivation of his constitutional rights, the issue of qualified immunity does not arise in this case, and the Court therefore need not determine whether defendants are entitled thereto. Conn, 526 U.S. at 293.

## CONCLUSION

Defendants have met their burden of demonstrating that there are no genuine issues of material fact and that they are entitled to judgment as a matter of law. Plaintiff has failed in all instances to allege facts sufficient to form a constitutional violation. Accordingly, the undersigned recommends that the court GRANT defendants' motion for summary judgment. (Dkt. #47). The undersigned further recommends that all other pending motions currently before the court be dismissed.

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedures, the parties shall have ten (10) days from service of this Report and Recommendation to file written objections thereto. See also Fed.R.Civ.P. 6. Failure to file objections will result in a waiver of those objections for purposes of appeal. Thomas v. Arn, 474 U.S. 140 (1985). Accommodating the time limit imposed by Fed. R. Civ. P. 72(b), the clerk is directed set this matter for consideration on **May 1, 2009**, as noted in the caption.

DATED this 8th day of April, 2009.

Karen L. Strombom
United States Magistrate Judge